IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MICHAEL C. LILLEY,
and KELLY G. LEWIS,
both individually, and on behalf of all
others similarly situated,

    Plaintiffs,

v.

IOC-KANSAS CITY, INC. d/b/a ISLE OF
CAPRI CASINO KANSAS CITY,

    Defendant.

Case No. 4:19-cv-00553-SRB

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. #17). The motion is DENIED.

### I.    Background and Legal Standard

Defendant IOC-Kansas City, Inc. d/b/a Isle of Capri Casino Kansas City moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the claims brought by Plaintiffs Michael C. Lilley and Kelly G. Lewis (collectively "Plaintiffs") in their Second Amended Class and Collective Action Complaint. Plaintiffs' Second Amended Complaint includes four counts, all brought against Defendant by Plaintiffs individually and on behalf of all others similarly situated: Count I – Fair Labor Standards Act ("FLSA") claim for unpaid overtime and minimum wages; Count II – Missouri Minimum Wage Law ("MMWL") claim for unpaid overtime and minimum wages; Count III – Breach of Contract claim based on Missouri law for failure to pay employees the agreed-upon hourly rate for every hour worked; and Count

IV – Unjust Enrichment/Quantum Meruit claim based on Missouri law for Defendant's receipt and retention of the benefit of employees' unpaid labor.

Plaintiffs' claims are based on Defendant's policy of paying up front and then deducting from employees' paychecks the cost of gaming license fees. Defendant's employees are required to obtain state-issued gaming licenses in order to operate casino table games. Plaintiffs allege, "Defendant made improper deductions from its employees' paychecks for gaming license fees and other deductions which reduced its employees' compensation below the required minimum wage and, in some situations, overtime rate under state and federal law for all hours worked." (Doc. #16, ¶ 2). Many or all of the involved employees were tipped employees; Plaintiffs were tipped employees of Defendant.

Pursuant to Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation and quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

## II. Discussion

The FLSA requires payment of a minimum wage for all hours worked. 29 U.S.C. § 206(a). To satisfy the minimum wage requirement, employers may count a limited amount of an employee's tips to satisfy any difference between the direct cash wage and the required minimum wage. 29 U.S.C. § 203(m)(2)(A). Pursuant to 29 U.S.C. § 203(m)(1), "'Wage' paid to any employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees[.]"

The Department of Labor has issued regulations concerning the meaning of "facilities." Title 29 C.F.R. § 531.3(d)(1)-(2) provides:

> (1) The cost of furnishing "facilities" found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages.
>
> (2) The following is a list of facilities found by the Administrator to be primarily for the benefit of convenience of the employer. The list is intended to be illustrative rather than exclusive: (i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform.

Title 29 C.F.R. § 531.32(a) provides:

> "Other facilities," as used in this section, must be something like board or lodging. The following items have been deemed to be within the meaning of the term: Meals furnished at company restaurants or cafeterias or by hospitals, hotels, or restaurants to their employees; meals, dormitory rooms, and tuition furnished by a college to its student employees; housing furnished for dwelling purposes; general merchandise furnished at company stores and commissaries (including articles of food, clothing, and household effects); fuel (including coal, kerosene, firewood, and lumber slabs), electricity, water, and gas furnished for the noncommercial personal use of the employee; transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment.

Title 29 C.F.R. § 531.35 provides in relevant part:

> The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

The MMWA includes substantially similar provisions. Mo. Rev. Stat. § 290.527; 8 C.S.R. § 30-4.010.

"An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below minimum wage." *Arriage v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) (citing 29 C.F.R. § 531.36(b)). "When evaluating expenses that are directly or indirectly related to employment, the examples in § 531.32 show a consistent line being drawn between those costs arising from the employment itself and those that would arise in the course of ordinary life." *Id.* at 1242. In *Williams v. Secure Res. Commc'n Corp.*, the district court analyzed whether a security guard license was primarily for the employer's or employee's benefit. No. 11 Civ. 03986(PAC)(JCF), 2013 WL 4828578, at *6 (S.D.N.Y. Sept. 10, 2013). The *Williams* court stated, "Professional licensing costs arise out of employment rather than the ordinary course of life. They therefore primarily benefit the employer, not the employee, and are not deductible to the extent that they bring an employee's pay below the minimum wage." Very recently, Judge Gary Fenner of this Court denied a substantially similar motion to dismiss and held, "The necessity of a gaming license arises out of employment, and therefore it primarily benefits Defendants, as employers."

*Lockett, et al. v. Pinnacle Entertainment, Inc., et al.*, Case No. 19-00358-CV-W-GAF, Docket No. 100, p. 9 (W.D. Mo. Oct. 10, 2019).

Defendant argues its policy of deducting gaming license fees from employees' paychecks is "permissible as a matter of law[]" under both the FLSA and MMWA. (Doc. #18, p. 4). Defendant argues its policy is both primarily for the benefit of the employees and "nothing more than the employees' repayment of a debt to [Defendant][.]" (Doc. #18, p. 4). Defendant argues that because the gaming licenses are required by the Missouri Gaming Commission and not Defendant and because the gaming licenses are portable in that employees can use the licenses to work at other Missouri casinos, the license-fee deduction primarily benefits employees.

The Second Amended Complaint alleges that the gaming license fee primarily benefits the Defendant. (Doc. #16, ¶ 19). The facts alleged in support of this conclusion include:

> Defendant's casino exists in a heavily regulated environment. . . . Defendant can only have table games in the casino if they are operated by employees (table game dealers) who have the required state-issued gaming license. . . . Without these state licensed employees, Defendant could not compliantly operate their casinos and, in turn, generate the revenues needed to support their operations and realize profits. . . . Plaintiffs have no use for their gaming license in the ordinary course of life outside the workplace.

(Doc. #16, ¶ 19). The Court finds that considering Plaintiffs' factual allegations in the context of the DOL regulations and caselaw, the gaming license fee is a cost arising from employment and not arising in the ordinary course of life. Plaintiffs have satisfied their burden at this early stage in the litigation to plead facts that would support the conclusion that the gaming license fee primarily benefits Defendant and, therefore, may not be deducted from wages to the extent the fee brings an employee's pay below the minimum wage required by the FLSA and MMWA.

Defendant's argument that the gaming license fee deduction represents repayment of a loan and is therefore permissible is also unavailing because the relevant inquiry focuses on

whether the gaming license fee benefits the employer or employee. *See Lockett*, Case No. 19-00358-CV-W-GAF, Docket No. 100, p. 6 (W.D. Mo. Oct. 10, 2019) (holding "it does not matter if the gaming license is . . . considered a loan[]"). Defendant's argument is also premature as shown by the cases Defendant cites in support. Defendant did not cite to the Court any cases decided on a motion to dismiss. (Doc. #18, pp. 8-10; Doc. #28, pp. 8-9).

For the first time in its reply, Defendant argues Plaintiffs failed to adequately allege that their wages ever fell below minimum wage. This argument was not included in Defendant's suggestions in support of its motion to dismiss and was specifically disclaimed. Defendant stated, "[Defendant] specifically denies that its deductions reduced Plaintiffs' wages below minimum wage. However, for the purpose of this Motion, [Defendant] will accept all Plaintiffs' allegations as true as required by Fed. R. Civ. P. 12(b)(6)." (Doc. #18, p. 4 n.1).

"The Court rarely relies on new arguments in reply briefs because the respondent did not have an opportunity to respond." *McDaniel v. Lombardi*, 227 F. Supp. 3d 1032, 1038 (W.D. Mo. 2016) (citation omitted). Plaintiffs argued in their suggestions in opposition that they adequately alleged their wages fell below minimum wage, but Plaintiffs' argument was not made in response to Defendant's explanation of its position as to the Second Amended Complaint's deficiencies on this issue. Even though the Court need not consider the argument, the Court finds Plaintiffs have adequately alleged that their wages fell below minimum wage.

The Second Amended Complaint includes the following allegations with respect to Plaintiff Lewis:

> For instance, Defendant deducted gaming license fees from Plaintiff Lewis's wages during the pay period ending on May 17, 2018. During this pay period, Defendant deducted an initial gaming license fee in the amount of $31.25 from Plaintiff Lewis's wages. During this pay period, Plaintiff Lewis was paid a direct cash wage of $4.50 per hour. For purposes of the FLSA, Defendant claimed a tip credit only to bridge the gap between Plaintiff Lewis's direct cash wage of $4.50 per hour and

the federal minimum wage of $7.25 per hour. Under these circumstances, and for purposes of the FLSA, any deduction from Plaintiff Lewis's wages, including the unlawful gaming license deduction at issue, violated the FLSA because they necessarily reduced her wages below the federal minimum wage for each hour worked.

(Doc. #16, ¶ 31). The Second Amended Complaint includes similar allegations with respect to Plaintiff Lilley. (Doc. #16, ¶ 32).

Plaintiffs' allegations are adequate at this early pleading stage. Defendant's motion to dismiss Counts I and II is denied.

Defendant also moves to dismiss the common-law claims in Counts III and IV. Defendant argues, "[A]s discussed throughout this Motion, [Defendant's] deductions were clearly permitted under the FLSA and MMWL." (Doc. #18, p. 11). Defendant then concludes that because the deductions were permissible, Defendant could not have been unjustly enriched or breached any agreement to pay Plaintiffs an agreed-upon hourly rate. However, this Court found that Plaintiffs have stated a claim that Defendant's deductions were impermissible under the FLSA and MMWL. Accordingly, Defendant's motion to dismiss Counts III and IV is also denied.

### III. Conclusion

Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #17) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 7, 2019